**Jerry Lee WILLIAMS, Sr., Appellant,**

v.

**Wayne WILLITS; Eldon McKinley; Roy Gully; Larry Moline; Reuben Baker; and Unknown Correctional Officers at the Iowa State Penitentiary, Appellees.**

No. 87–1884.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1988.

Decided Aug. 3, 1988.

Richard A. Malm, Des Moines, Iowa, for appellant.

Layne M. Lindebak, Des Moines, Iowa, for appellees.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and BENSON,[*] District Judge.

BEAM, Circuit Judge.

Jerry Lee Williams, Sr. appeals from an order of the district court dismissing his civil rights complaint against five correctional staff members of the Iowa State Penitentiary (ISP); the warden (Scurr) of the ISP; and the Director of Adult Corrections (Farrier) for the State of Iowa. The district court found that the ISP staff members were protected from appellant's suit by qualified immunity. The court found that appellant's allegations against Farrier and Scurr failed to present a claim upon which relief could be granted. We affirm but, in part, on alternative grounds.

**Background**

Appellant was injured in a prison yard fight. Appellant's complaint alleges that the ISP staff members who were present at the fight are liable to him under 42 U.S.C. § 1983 because they failed to protect him—a right secured by the eighth amendment. The warden and director, according to appellant's complaint, are liable because the staff members are liable.

**The Fight**

The fight took place in May of 1981. Appellant confronted a fellow prisoner, Michael Einfeldt, concerning some legal papers and initiated an altercation. Appellant, who was the prison's former boxing champion, and Einfeldt, a man of similar build and weight were evenly matched. They fought for about ten minutes. During the course of the scuffle, a crowd of 20 to 60 inmates gathered to watch.

Three to five staff members were in the crowd. At least one staffer ordered the combatants to stop the altercation. Otherwise, no physical intervention occurred because it was deemed best for the safety of the inmates and staff to not provoke additional physical confrontations.

During the course of the fight, Williams and Einfeldt would occasionally pause, hug each other, kiss and say "I love you, brother." Then they would resume fighting. When they finally finished, appellant was taken to the prison hospital for treatment of minor injuries, a cut mouth and some bruises.

Eventually there was a disciplinary report made, and some alleged due process violations occurred concerning the account, which allegations are not a part of this appeal. Appellant filed this action on May 23, 1983. On June 30, 1983, the district court dismissed the allegations against Farrier and Scurr. An evidentiary hearing was held before a United States magistrate to take evidence concerning appellant's claims against the remaining defendants. The hearing took place on October 21, 1986. Appellant moved to have Farrier and Scurr reinstated as defendants at the conclusion of the hearing. The magistrate later issued his recommendation that the suit be

[*] The HONORABLE PAUL BENSON, Senior United States District Judge for the District of North Dakota, sitting by designation.

dismissed. The district court adopted that recommendation. Williams appeals.

## Dismissal of Director and Warden

■ The district court dismissed appellant's section 1983 complaint against the director and the warden because the pleading asserted only allegations of vicarious liability. The district court properly found that such claims are not actionable under 42 U.S.C. § 1983. *Cotton v. Hutto,* 577 F.2d 453, 455 (8th Cir.1978). Applying 28 U.S.C. § 1915(d), the court found the charge to be frivolous. Appellant now argues that the complaint also stated a claim of supervisory liability, and, therefore, the dismissal was erroneous. We disagree.

### A. Appellant's Complaint

■ The complaint was filed as a proceeding in forma pauperis and appellant drafted the complaint himself. Even so, a court may dismiss such a case if "satisfied that the action is frivolous," 28 U.S.C. § 1915(d), and vicarious liability is not actionable under 42 U.S.C. § 1983. *Cotton,* 577 F.2d at 455.

There can be no question that appellant's complaint sought relief solely on a vicarious liability theory. A comparison of the elements necessary to impose supervisory liability with the allegations made in appellant's complaint bears this out.

■ To prove a supervisory liability claim, the plaintiff must demonstrate that prisoners face a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or " 'tacit authorization of the offensive [practices].' " *Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985) (quoting *Orpiano v. Johnson,* 632 F.2d 1096, 1101 (4th Cir.1980), *cert. denied,* 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981)). A single incident, or isolated incidents, do not ordinarily satisfy this burden. *Orpiano,* 632 F.2d at 1101.

In his complaint, appellant mentions the warden and director in only two contexts. He first mentions them to substantiate his claim that the correctional staff members were negligent in not coming to his aid. The staff members were apparently negligent, in appellant's view, because the warden and director "and or his subordinates * * * should have known that [appellant] was being treated for lower back disabilities * * * which rendered [appellant] virtually helpless.!!" Complaint at 4.

Appellant again mentioned these two defendants in the following manner where he listed his claims:

1. That the staff members were negligent;

2. That the disciplinary report investigation violated his due process rights;

3. That the director is legally responsible for the overall operation of the ISP; and

4. The warden is legally responsible for the operation of ISP and inmate welfare.

*See* Complaint at 4–5.

We recognize that a prisoner's pro se civil rights complaint is to be liberally construed. *Wilson v. Iowa,* 636 F.2d 1166, 1167 (8th Cir.1981). Moreover, the district court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. *Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974). At the same time, "liberal construction" concerns whether it appears "beyond a doubt that petitioner can prove no set of facts in support of his claim * * *." *Smith v. Bacon,* 699 F.2d 434, 436 (8th Cir.1983) (quoting *Wilson,* 636 F.2d at 1168)). We do not believe, however, that a district court must pretend that certain facts exist in order to foresee a theory of recovery not actually raised or reasonably inferred by the pleader.

■ Appellant's account of the fight tells of a well run, secure prison where guards have no excuse not to physically stop a fight. According to appellant's complaint, over a dozen guards "stood idly by watching and laughing" during the fight. Complaint at 4. There was no mention of previous fights; understaffing; a dangerous atmosphere; or any deliberate indifference or tacit approval by the warden and director of an offensive practice, *e.g.*, non-

intervention by prison personnel in fights. In short, the only offensive practice alleged was the isolated occurrence in which these staff members failed to intervene to stop the fight. Williams' complaint simply stated a claim seeking relief on vicarious liability grounds. We, therefore, affirm the original dismissal under 28 U.S.C. § 1915(d).

## B. Motion to Reconsider

As was already mentioned, a hearing before a United States magistrate was held to take testimony and receive evidence on appellant's claims against the five ISP staff members. These remaining defendants were the ISP personnel allegedly present at the altercation in the prison yard. At the conclusion of the hearing, appellant moved to amend his complaint to conform to the proof adduced at the hearing, seeking to have Farrier and Scurr reinstated as defendants. Appellant argued that the remaining defendants had raised a defense, which if believed, directly stated a claim against Director Farrier and Warden Scurr "in the precise manner alleged in the original petition * * *." Appellant's motion to reconsider dismissal, at 2 (filed November 21, 1986).[1]

The district court denied appellant's motion because it concluded that there was insufficient evidence to raise a factual issue on whether Farrier or Scurr acted with deliberate indifference towards conditions at ISP. The question before us is whether it was an abuse of discretion for the district court to deny appellant's motion to reconsider. *Benson v. Matthews,* 554 F.2d 860, 862–63 (8th Cir.1977).

Initially, we note that not every injury rises to the level of a constitutional wrong. *See Withers v. Levine,* 615 F.2d 158, 162 (4th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980). Before one examines the nature and the quality of the wrong, one must first look for the constitutional right, protection of which is sought, and the kind of protection which is required. *Id.* There must also be a nexus

between the alleged deprivation and the injury sustained. *See Wade v. Haynes,* 663 F.2d 778, 782 (8th Cir.1981), *aff'd sub. nom., Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Slakan,* 737 F.2d at 373.

## The Constitutional Right

Appellant's motion to reconsider asserts that Farrier and Scurr subjected him to cruel and unusual punishment in violation of the eighth amendment by "abdicat[ing] their responsibility to maintain safe conditions in the prison and to protect inmates from violence of other inmates." Memorandum in support of motion to reconsider at 7 (filed November 21, 1986).

## Protection Afforded

A prisoner has a right, under the eighth amendment, to be reasonably protected from the "constant threat of violence * * * [from] his fellow inmates * * *." *Woodhous v. Virginia,* 487 F.2d 889, 890 (4th Cir.1973). Unsafe conditions have been held to be of constitutional dimension where violence occurs with sufficient frequency that prisoners are put in reasonable fear for their safety. *Vosburg v. Solem,* 845 F.2d 763, 766 (8th Cir.1988). While prison conditions need not amount to a reign of terror, *id.,* to be unconstitutional, prisons need not be country clubs, or even comfortable. *Martin v. White,* 742 F.2d 469, 473 (8th Cir.1984). Indeed, some violence in prisons has been found to be unavoidable due to the character of the prisoners. *Id.* at 475.

■ Appellant argues that the staffing and security policies of Farrier and Scurr resulted in the inmates arming themselves because they feared inmate violence; that the ISP staff feared the armed inmates and did nothing to disarm them; and, essentially, that the inmates ran the prison because the guards were routinely unable or unwilling to intervene in inmate fights. For purposes of discussion, we will assume that such conditions existed and that prisoners were, therefore, not reasonably protected from the "constant threat of violence [from

---

1. Appellant contends that Farrier and Scurr allowed conditions to so deteriorate that staff routinely did not or were unable to intervene in prisoner fights.

their] fellow inmates." *Woodhous,* 487 F.2d at 890. Nevertheless, we do not believe that appellant has demonstrated a sufficient nexus between these alleged conditions and what happened in the prison yard on that spring day in 1981. A survey of similar cases demonstrates nexus requirements.

In *Vosburg,* the prisoner claimed that the prison had a pass system permitting young inmates to be alone with older ones; double-celled inmates regardless of whether the cellmate was a violent or nonviolent offender; and had guards stationed so as to be unable to observe what went on in the cell areas. These policies resulted in the frequent rape of inmates, according to Vosburg, and having been raped four times, he sought relief. There was a sufficient nexus because Vosburg's degradations resulted from the very policies that he claimed created the unconstitutional conditions. *See Vosburg,* 845 F.2d at 766–67.

Similarly, in *Slakan,* there was a sufficient nexus where a warden had approved the use of water hoses on single-celled handcuffed prisoners and the prisoner's injuries were caused by the practice. 737 F.2d at 374.

Likewise, in *Martin,* the prisoner claimed a failure to protect where there were no policies of segregating prisoners based on propensities towards violence; guards were stationed in areas which made it impossible to view the inmates' cells; and there were no procedures in effect to discover whether the locks on individual cells were defective. 742 F.2d at 471. There was a sufficient nexus shown since the plaintiff had been forcibly removed to the cell of another, by four inmates, and sodomized. The inmates had gained access to the plaintiff's cell by picking the lock with a paper clip and the entire event went unseen by the guards. *Id.* at 476.

In appellant's case, there is no such nexus. First of all, it was never shown that the inmates in the area were armed on the day in question. Second, at least one of the guards did try to physically intervene, at which point one inmate grabbed him

around the neck and threatened him. Third, inability to break up the fight stemmed from the happenstance of too few guards and too many prisoners—the staffing being insufficient only because of the location of the fight and the high level of interest it quickly engendered among the inmates at that particular time. And, to the extent that tensions were high, they resulted from the prisoners' own gang affiliations and racists proclivities—not staffing policies implemented by Farrier and Scurr.

Finally, in cases where a nexus has been established, similar incidents have usually occurred prior to the injury in question. *See Slakan,* 737 F.2d at 374 (six hosings by one guard alone, and widespread hosings by other guards); *Vosburg,* 845 F.2d at 770 (record replete with evidence of other rapes on similarly situated plaintiffs); *Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984) (assaults occurred on a fairly regular basis). It was never suggested by appellant that similar altercations had occurred previously at ISP.

Finally, as also discussed earlier, appellant's initial complaint makes clear that he did not live with a fear of being attacked. Indeed, not until the hearing did appellant ever suggest that conditions were so bad at ISP that the guards were unable to protect inmates from one another. At the hearing, appellant testified: "Nothing wasn't tense out there [in the prison yard during the fight]. It was—The atmosphere was a circus atmosphere. It wasn't no tension out there. I never seen no tension." Transcript at 35.

Given that only after the hearing did appellant suddenly (five years after the fight) realize that security policies at ISP were constitutionally inadequate to maintain safe conditions, the lack of a nexus between such conditions and that which happened on the day in question, and the fact that the incident was an isolated event rather than a frequent occurrence, the district court did not abuse its discretion in denying appellant's motion.

## C. Qualified Immunity of the Guards.

The district court found that the staff members were protected by qualified immunity. We affirm the district court decision, but on the ground that there was no deprivation of appellant's constitutional rights.

■ A prisoner has a "clearly established" eighth amendment right to be reasonably protected from known dangers of attacks by fellow inmates. *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir.), *cert. denied*, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984). The record demonstrated that the prison staff attempted to intervene and made the perfectly reasonable decision that further intervention would threaten the health and safety of all concerned. In any event, the guards were suddenly outnumbered by inmates which event made breaking up the fight physically impossible. These are facts found by the district court and supported by the record.

The question before us is whether the staff members' actions deprived appellant of his eighth amendment rights on May 23, 1981. The answer is no. We think appellant was required to show that the ISP staff members were at least deliberately negligent in not breaking up the fight. *See, e.g., Withers*, 615 F.2d at 162 (denial of medical care is not unconstitutional unless it amounts to deliberate neglect); *Martin v. White*, 742 F.2d 469, 474 (4th Cir. 1984) (lack of protection not unconstitutional unless official is deliberately indifferent or actually intended to deprive plaintiff of constitutional rights); *Vosburg*, 845 F.2d at 765 (official's failure to develop administrative policies to protect plaintiff not unconstitutional if reasonable). No ordinary negligence, let alone deliberate neglect, was established. Thus, the district court was correct in dismissing the case.

## Conclusion

The order of the district court is affirmed.