**Robert Anthony WILLIAMS, Plaintiff,**

v.

**Jerry MANTERNACH, William Soupene, Steve Hebron, and Charles Okoye, Defendants.**

**No. C 01–0036–MWB.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

March 15, 2002.

Robert Anthony Williams, pro se.

Layne M. Lindebak, Assist. Atty. Gen., Des Moines, IA, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* ..................................................982

II. *LEGAL ANALYSIS* ...............................................984
 A. *Standard Of Review* .................................................984
 B. *Williams's Objections*..............................................984
 C. *Claims Arising From Disciplinary Reports* .........................985
 1. *"Due process" claims* .......................................985
 2. *"Retaliation" and "conspiracy" claims* .......................986
 a. *Construction of the Complaint* ......................986
 b. *Analysis of "retaliation" and "conspiracy" claims* ...............987
 D. *Claims Arising From "Lifer" Status* ...............................988
 1. *Construction of the claims* ..................................990
 2. *Sufficiency of the "equal protection" claims* ......................990
 E. *Appointment Of Counsel* ...........................................992

III. *CONCLUSION* ..................................................992

This action pursuant to 42 U.S.C. § 1983 by plaintiff Robert Anthony Williams, an inmate of the Anamosa State Penitentiary, comes before the court on the December 27, 2001, Report and Recommendation of Magistrate Judge Paul A. Zoss on the defendants' April 20, 2001, motion to dismiss. Judge Zoss recommended dismissal of this action in its entirety for failure to state a claim upon which relief can be granted. After an extension of time to do so, plaintiff Williams filed objections to the Report and Recommendation on January 22, 2002.

## I. INTRODUCTION

Williams, who is serving a life term at the Anamosa State Penitentiary, filed his

*pro se* Complaint in this action on March 12, 2001, alleging various claims arising from two prison disciplinary reports concerning misuse of computers. The first disciplinary report followed the discovery on February 25, 1999, of purportedly unauthorized files on a floppy disk in a computer Williams used in his prison job. The second disciplinary report followed an incident on October 7, 2000, when Williams purportedly printed legal work for another inmate on the computer at Williams's work station in the prison hobby center. Williams alleges that those disciplinary reports resulted in disciplinary detention, loss of his "level V status," and loss of his prison job, although Williams contends that, had proper procedures been followed, neither incident would even have resulted in a disciplinary report or finding of a rules violation.

In an Initial Review Order, Judge Zoss characterized Williams's Complaint as challenging only "the legality of his disciplinary report conviction regarding an incident that took place on February 25, 1999," and seeking "compensatory and punitive damages, restoration of Level 5 status, and return to his prison job." March 22, 2001, Initial Review Order at 1–2. However, in his Report and Recommendation on the defendants' motion to dismiss, Judge Zoss characterized Williams's Complaint as asserting the following claims:

> Williams argues the defendants' failure to inform him that he was under investigation, and that a disciplinary report was being considered, violated prison disciplinary procedures and policies, and thus, violated his due process rights. Further, Williams alleges the defendants conspired to evade investigatory procedures for the purpose of violating his rights and covering up improper procedures by a new correctional officer.

> Lastly, Williams contends the actions of the defendants in establishing and implementing "policies and procedures that assure only so many lifers are on all employment cites [sic] as well as quota(s) in the levels one can earn" violate his right, as a lifer, to "equal protection and equal privileges in connection with quotas in employment and movement through the level system."

December 27, 2001, Report and Recommendation at 5. Although there is some uncertainty about what claims Williams is asserting, the relief he seeks is specifically stated in his Complaint to consist of compensatory and punitive damages, restoration of his level status, and reinstatement in one or the other of his prison jobs. *See* Complaint at VI.

On April 20, 2001, the defendants moved to dismiss Williams's Complaint for failure to state a claim upon which relief can be granted. More specifically, the defendants' motion and supporting brief asserted the untimeliness of claims based on events in February and March of 1999; the applicability of the requirement, from *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that Williams secure the invalidation of the prison discipline before he asserts a § 1983 claim, which Williams had not done; and Williams's failure to allege a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The defendants did not address any equal protection claim in their motion to dismiss, instead moving to dismiss only the due process claim identified in the Initial Review Order.

In response to the defendants' motion to dismiss, Judge Zoss recommended that Williams's Complaint be dismissed in its entirety for failure to state a claim on which relief can be granted. Judge Zoss concluded that Williams had not pleaded any protected liberty interest, to which due process could attach, because, under the standard established in *Sandin v. Con-*

*ner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), Williams had not suffered any deprivation that was "atypical and significant," in the context of his life sentence, in his disciplinary detention, the loss of his level status, or the loss of his prison job. Judge Zoss concluded further that Williams could not state a due process claim based solely on the alleged failure of prison officials to follow state mandated procedures for investigating and processing the disciplinary charges, because due process protection does not extend to the procedures themselves, but only to the nature of Williams's confinement. Despite the absence of any challenge on the part of the defendants to Williams's equal protection claim, Judge Zoss also concluded that Williams had failed to state an equal protection claim, because he had alleged neither factual support establishing that he is "similarly situated" to any other inmate who received more favorable treatment, nor facts evidencing intentional or purposeful discrimination for the alleged less favorable treatment.

As noted above, Williams filed lengthy objections to Judge Zoss's Report and Recommendation, which the court must now consider in its review of Judge Zoss's recommended disposition of this action.

## II. LEGAL ANALYSIS

### A. Standard Of Review

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk* ). However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Therefore, portions of the proposed findings or recommendations to which no objections are filed are reviewed only for "plain error." *See Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir.1994) (reviewing factual findings for "plain error" where no objections to the magistrate judge's report were filed).

### B. Williams's Objections

The court finds that the objections Williams has filed in this matter are sufficient to invoke *de novo* review of Judge Zoss's Report and Recommendation. In his objections, Williams contends that, in general, Judge Zoss has misapprehended his claims or has ignored portions of his claims. More specifically, at least as this court understands Williams's objections, he contends that Judge Zoss did not address his claim of retaliation for assisting inmates with legal matters in relation to the two misconduct reports; did not consider, misapprehended, and did not require the defendants to respond to, his claims of conspiracy and invidious discrimination against "lifers," including his equal protection attack on the "quota system"; misap-

prehended his claims pertaining to the two misconduct reports, which are actually claims of a conspiracy to deny him "due process in place for disciplinary reports," retaliation for being a jailhouse lawyer, with sanctions for his alleged misconduct selected accordingly, and "orchestration" of the conspiracy by defendant Soupene by turning over the matter to another ALJ to "safeguard against the appearance of impropriety"; and failed to examine the procedural deviations in the second misconduct report arising from a conspiracy among the defendants. *See* Plaintiff's Objections to Report and Recommendation of Magistrate at 1–2.

This court finds that Judge Zoss considered only two claims: (1) a claim of violation of due process arising from the two disciplinary reports; and (2) a claim of violation of equal protection as to "lifers" at the Anamosa State Penitentiary in application of a "quota system" for "lifers" in "levels one can earn" and jobs "lifers" can occupy. Upon *de novo* review, however, this court concludes that these were only two of several claims Williams was apparently attempting to assert.

### C. Claims Arising From Disciplinary Reports

#### 1. "Due process" claims

█ Plainly, Williams did assert a claim of violation of due process arising from the two disciplinary reports, including two alternatives specifically analyzed by Judge Zoss: (a) a claim that the disciplinary reports and sanctions impinged upon Williams's protected liberty interest, because they resulted in disciplinary detention, loss of "level status," and loss of his prison job, *i.e.*, a claim based on "results," and (b) a claim that Williams had a liberty interest that was violated by the prison officials' failure to follow regular prison procedures and policies for imposition of disciplinary sanctions, *i.e.*, a claim based on "procedural irregularities." For essen-

tially the reasons stated by Judge Zoss, the court concludes that neither of these "due process" claims is viable.

First, the "results" alternative of the "due process" claim is not viable under *Sandin v. Conner,* 515 U.S. 472, 484–85, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As Judge Zoss correctly explained, neither Williams's placement in disciplinary detention for 30 days, nor his loss of level status, nor his loss of his prison job resulted in the imposition of punishment that constituted "a dramatic departure from the basic conditions" of his prison confinement, fell outside "the expected parameters of the sentence imposed by a court of law," or otherwise constituted "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *See* Report and Recommendation at 10–11. Second, upon *de novo* review of the "irregular procedures" alternative of Williams's due process claim, this court agrees with Judge Zoss that, to the extent that Williams is attempting to assert a constitutional liberty interest in having state officers following state law—that is, prison regulations concerning procedures for investigation, determination, and punishment of prison rules violations— Williams has misinterpreted the nature of procedural due process. As Judge Zoss concluded, "If Williams has a liberty interest at all, 'it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined.'" *Id.* at 11 (citing, *inter alia, Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir.1996)). Thus, the court will accept these portions of Judge Zoss's Report and Recommendation and dismiss Williams's "due process" claims founded on either a "results" or "procedural irregularities" theory.

## 2. "Retaliation" and "conspiracy" claims

### a. Construction of the Complaint

■ However, the court agrees with Williams that Judge Zoss did not consider "conspiracy" and "retaliation" claims with regard to the prison disciplinary reports, even though such claims, or the factual bases for such claims, were pleaded in Williams's Complaint. The court recognizes that such an oversight might be partially or substantially attributable to the inartful pleading of Williams's claims in his *pro se* Complaint. However, when giving a *pro se* complaint the liberal construction to which it is entitled, the question is whether factual allegations support a legal theory, not whether the legal theory is specifically articulated. *See, e.g., Bracken v. Dormire,* 247 F.3d 699, 702–03 (8th Cir.) (noting that "it is our longstanding practice to construe *pro se* pleadings liberally," but distinguishing between a *pro se* complaint that "inartfully raised factual issues that implicated legal propositions that [the pleader] could not reasonably be held responsible for articulating," and failure to plead either the law or facts in support of a claim), *cert. denied,* —— U.S. ——, 122 S.Ct. 302, 151 L.Ed.2d 224 (2001); *Williams v. Willits,* 853 F.2d 586, 588 (8th Cir.1988) ("We recognize that a prisoner's *pro se* civil rights complaint is to be liberally construed. Moreover, the district court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.") (citations omitted).

To the extent that Judge Zoss recognized that Williams was asserting a "conspiracy" claim, he did not analyze it separately. Moreover, to the extent that Judge Zoss read Williams's "conspiracy" claim as a claim of a conspiracy "to evade investigatory procedures for the purpose of violating [Williams's] rights and covering up improper procedures by a new correctional officer," *see* Report and Recommendation at 5, this court must agree that such a reading is a plausible rendering of Williams's "conspiracy" claim. *See, e.g.,* Complaint at V(17) & (20). However—perhaps with hindsight informed by re-reading Williams's *pro se* Complaint and his resistance to the defendants' motion to dismiss in light of his objections to the Report and Recommendation—the court believes that Williams was nevertheless *also* attempting to assert a claim that the defendants both retaliated and conspired to retaliate against him for engaging in jailhouse lawyering by subjecting him to irregular procedures and sanctions for prison rules violations.

The court acknowledges that no reference to "retaliation" appears in the *pro se* Complaint, and that neither Judge Zoss, in his Report and Recommendation, nor the defendants, in their motion to dismiss, considered such a claim. However, "retaliation" figures prominently as the characterization of some of Williams's claims in his Objections and is raised, albeit somewhat vaguely, in his resistance to the motion to dismiss. What does appear in Williams's Complaint, after a recitation of alleged errors and irregularities in investigation, disposition, and punishment of the February 1999 rules violation, is an allegation that the actions of defendant Soupene with regard to that rules violation and its subsequent disposition by another prison official, ALJ Noonan, "were part and parcel of the initial conspiracy," that "ALJ Soupen's [sic] actions were vindictive, arbitrary, and represent this institution's unspoken but clear class based invidious discriminatory animus against state convicts ... who importunistically attempt to help other inmates with their legal problems." *See* Complaint at V(1)–(11)(D) (with quotations above drawn from (11)(B) & (C)). The court reads these allegations to be tantamount to an allegation that the conduct of

the defendants identified in this portion of the Complaint, and specifically defendant Soupene's actions, were "in retaliation" for Williams's status as a jailhouse lawyer. Similarly, reading the subsequent allegations of impropriety and conspiracy as to the second disciplinary report, in October of 2000, in light of the allegation of animus towards jailhouse lawyers, the court also reads the Complaint as attempting to state a claim of retaliation and conspiracy to retaliate towards a jailhouse lawyer in the processing and punishment of the second disciplinary report. To put it another way, even though the Complaint does not use the appropriate term of art for a "retaliation" claim, it alleges both "factual issues that implicated [that] legal proposition[ ]," *see Bracken,* 247 F.3d at 702–03, and provides sufficient factual "allegations [to] provide for relief on [a retaliation] theory." *See Williams,* 853 F.2d at 588.

### b. Analysis of "retaliation" and "conspiracy" claims

Judge Zoss's recommendation of dismissal on the ground that Williams has failed to state due process claims arising from his two disciplinary reports is not sufficient to dispose of Williams's "retaliation" and "conspiracy to retaliate" claims. It is not enough to dispose of a "retaliation" claim—in this case, a claim of retaliation for jailhouse lawyering activities—that there was no underlying due process or other constitutional violation. The Eighth Circuit Court of Appeals has "long recognized an inmate's cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for the inmate's exercise of his constitutional rights." *Moore v. Plaster,* 266 F.3d 928, 931 (8th Cir.2001) (citing *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989)), *petition for cert. filed,* (Feb. 11, 2002) (No. 01–8588). Moreover, "the alleged manifestations of defendants' retaliation (such as less favorable treatment) need not themselves amount to constitutional violations [because] [t]he violation lies in the intent to impede" the inmate's constitutional rights. *Madewell v. Roberts,* 909 F.2d 1203, 1206–07 (8th Cir.1990); *accord Cody v. Weber,* 256 F.3d 764, 771 (8th Cir.2001) ("Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason.") (citing *Madewell* ). It necessarily follows that a claim of "conspiracy to retaliate" also need not be based on an underlying constitutional violation, because it is the agreement to impede the inmate's constitutional rights that is the "violation" supporting such a claim.

Although a retaliation claim is not dependent upon sufficient pleading or proof of an underlying constitutional violation—in this case, sufficient pleading or proof of a due process violation—as the Eighth Circuit Court of Appeals has explained,

[C]laims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994), *cert. denied,* 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). Thus, a defendant may successfully defend a retaliatory-discipline claim by showing "some evidence" that the inmate actually committed a rule violation. *Goff v. Burton,* 7 F.3d 734, 738 (8th Cir.1993), *cert. denied,* 512 U.S. 1209, 114 S.Ct. 2684, 129 L.Ed.2d 817 (1994); *see also Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

*Moore,* 266 F.3d at 931; *Cowans v. Warren,* 150 F.3d 910, 912 (8th Cir.1998) (where a prisoner alleges that disciplinary action taken against him for conduct unrelated to his grievance was nonetheless tak-

en in retaliation for filing the grievance, the prisoner "may not state a claim of retaliation where the 'discipline [was] imparted for acts that a prisoner was not entitled to perform' ") (quoting *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir. 1990) *(per curiam )).* In short, "where an inmate has violated an actual prison rule, no retaliation claim can be stated." *Cowans,* 150 F.3d at 912. Moreover, to state a claim of "conspiracy" to violate inmate rights, an inmate must "allege facts suggesting a mutual understanding or meeting of the minds." *Cooper v. Delo,* 997 F.2d 376, 377 (8th Cir.1993); *Snelling v. Westhoff,* 972 F.2d 199, 200 (8th Cir.1992) *(per curiam )* (to state a conspiracy claim under § 1983, an inmate must assert "specific facts showing '[a] meeting of [the] minds' among alleged conspirators") (quoting *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir.1988)), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 132 (1993).

▇▇▇▇ This matter is presently before the court on the defendant's pre-answer motion to dismiss. Consequently, the court cannot determine from the pleadings alone whether there has been an actual prison rule violation, or whether there is "some evidence" of such a violation, to defeat Williams's "retaliation" claim. *See Moore,* 266 F.3d at 931; *Cowans,* 150 F.3d at 912. The issue on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989). Although a motion for summary judgment might quickly resolve whether or not there is "some evidence" of a rule violation on each occasion Williams alleges that he was subjected to retaliatory

disciplinary action, which would torpedo Williams's retaliation claims, at this stage of the proceedings, the court must give Williams's claims a liberal construction, and assume his factual allegations are true. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."). Moreover, the court finds that Williams has sufficiently pleaded facts indicating a "meeting of the minds" among the conspirators by alleging their awareness of his jailhouse lawyering activities and cooperation to impose disciplinary sanctions upon him because of those activities. *See Cooper,* 997 F.2d at 377; *Snelling,* 972 F.2d at 200. Thus, it is *not* "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" ' of retaliation and conspiracy to retaliate for Williams's jailhouse lawyering, which makes it inappropriate for the court to dismiss these portions of Williams's Complaint for failure to state a claim upon which relief can be granted. *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."). Therefore, the court will modify the Report and Recommendation to permit this matter to proceed on claims of "retaliation" and "conspiracy to retaliate" for jailhouse lawyering premised on the two disci-

plinary reports.[1]

### D. Claims Arising From "Lifer" Status

As mentioned above, Judge Zoss also concluded that Williams had failed to state an equal protection claim, because he had alleged neither factual support establishing that he is "similarly situated" to any other inmate who received more favorable treatment, nor facts evidencing intentional or purposeful discrimination for the alleged less favorable treatment. This portion of Judge Zoss's Report and Recommendation, however, cannot be accepted. First, it is not clear to the court, where, if at all, the defendants moved to dismiss Williams's equal protection claims based on disparate treatment of "lifers." Rather, the defendants' motion and brief refer only to the untimeliness of claims based on events in February and March of 1999; the applicability of the requirement, from *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct.

2364, 129 L.Ed.2d 383 (1994), that Williams secure the invalidation of the prison discipline before he asserts a § 1983 claim; and Williams's purported failure to allege a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Thus, the court is not convinced, upon *de novo* review, that the defendants ever properly put the adequacy of Williams's pleading of his equal protection claim before the court or that Judge Zoss properly reached the issue in the absence of assertion by the defendants.[2] Moreover, upon *de novo* review—again giving Williams's *pro se* Complaint the liberal construction to which it is entitled, *see Bracken*, 247 F.3d at 702–03; *Williams*, 853 F.2d at 588, and reading his Complaint with the benefit of hindsight refocused by Williams's Objections to the Report and Recommendation—the court finds that Williams *has* pleaded equal protection violations based

---

1. The court believes that characterization of portions of Williams's claims arising from the two disciplinary reports as "retaliation" and "conspiracy to retaliate" for jailhouse lawyering encompasses the claims identified in Williams's objections as retaliation for assisting inmates with legal matters in relation to the two misconduct reports; conspiracy to deny him "due process in place for disciplinary reports"; retaliation for being a jailhouse lawyer, with sanctions for his alleged misconduct selected accordingly; "orchestration" of the conspiracy by defendant Soupene by turning over the matter to another ALJ to "safeguard against the appearance of impropriety"; and procedural deviations in the second misconduct report arising from a conspiracy among the defendants. Although the defendants leveled statute of limitations challenges to Williams's claims arising from the first disciplinary incident, the court will not reach the question of whether the "retaliation" and "conspiracy to retaliate" claims arising from that incident are time-barred until such time as the "retaliation" and "conspiracy to retaliate" claims are recast in further pleadings by the plaintiff, as required by the court below. The court will also leave open, for now, the question of whether either a continuing viola-

tion theory or single conspiracy theory would establish the timeliness of such claims. This course is appropriate, at least in part, because it does not appear that the defendants understood Williams to be asserting either a "retaliation" or a "conspiracy to retaliate" claim, which makes it inappropriate for the court to hypothesize too broadly about what challenges the defendants meant to address to what claims.

2. No equal protection claims are identified in Judge Zoss's Initial Review Order, either, which characterized Williams's Complaint as challenging only "the legality of his disciplinary report conviction regarding an incident that took place on February 25, 1999," and seeking "compensatory and punitive damages, restoration of Level 5 status, and return to his prison job." March 22, 2001, Initial Review Order at 1–2. Because the Initial Review Order did not address, then specifically exclude, Williams's equal protection claims as claims to which the defendants must respond, this court concludes that there has been no determination that the equal protection claims were too frivolous to require an answer. Instead, the Initial Review Order simply overlooked some of Williams's claims.

on his treatment as a "lifer" sufficiently to state a claim upon which relief can be granted.

### 1. Construction of the claims

First, as with Williams's claims arising from the disciplinary reports, the court finds that some construction of Williams's Complaint is required to determine what claims arising from his status as a "lifer" Williams was attempting to state. In his allegations of misconduct concerning the first disciplinary report, Williams alleges that "ALJ Soupen's [sic] actions were vindictive, arbitrary, and represent this institution's unspoken but clear class based invidious discriminatory animus against state convicts who happen to be lifers...." Complaint at V, ¶ 11(C). Williams also alleges that, "because of lifer status," the sanctions imposed following the second disciplinary report at issue here, resulted in his "having to wait one year to become eligible for level 5 replacement, and until a lifer [who] already is in level 5 either dies or is removed for misconduct before a cell is available when my name comes up on the list." Id. at ¶ 26. Furthermore, Williams alleges, "Mr. Steve Hebron and Mr. Jerry Manternach are also named in connection with a second claim of intentional deprivation of equal protection and equal privileges in connection with quota(s) in employment and movement through the level system." Id. at ¶ 27. He alleges further that "[t]hese defendants [Hebron and Manternach] author and/or oversee policies and procedures that assure only so many lifers are on all employment cites [sic] as well as quota(s) in the levels one can earn"; that "[t]here is a class based invidiously discriminatory animus behind these defendants, who have conspired and continue to conspire to assure state convicts that happen to be lifers suffer as a result of same"; that he "is now victimized because of it"; and that defendant Soupene "in his sanctions imposed upon plain-

tiff is a part of that conspiracy." Id. at ¶¶ 27–31. The court reads these allegations as an attempt to assert claims of violation of, and conspiracy to violate, equal protection rights in the disparate treatment of "lifers" as to jobs and level advancement, and more specifically, claims of violation of, and conspiracy to violate, Williams's own equal protection rights by reclassifying him as a punishment for groundless disciplinary violations so that he would be barred from prompt reinstatement to either his job or his level status by the quotas on "lifers."

### 2. Sufficiency of the "equal protection" claims

Upon de novo review, the court accepts Judge Zoss's articulation of the legal standards applicable to an equal protection claim and his conclusion that Mr. Williams's equal protection claims warrant only "rational basis" review. See Report and Recommendation at 12–15. The court disagrees, however, with Judge Zoss's conclusions that Williams has failed to meet either of the necessary predicates to state a cognizable claim under the Equal Protection Clause, which are that he suffered treatment different from other prisoners in his circumstances and that such unequal treatment was the result of intentional or purposeful discrimination. Id. at 15; see also Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir.1994) (first predicate), cert. denied, 513 U.S. 1185, 115 S.Ct. 1177, 130 L.Ed.2d 1130 (1995); McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (second predicate). Contrary to Judge Zoss's conclusion that Williams has failed to allege factual support establishing that he is "similarly situated" to any other inmate who received more favorable treatment, the court finds that it is plainly implicit in Williams's pleadings, identified above, that prisoners who are not "lifers" are not subjected to

quotas on how many of them can be on any employment site or the "levels" that they can earn, *i.e.*, that apart from "lifer" status, they are similarly situated, but enjoy different treatment in the absence of quotas on job assignments and levels that they can earn. At the pleading stage, the court does not believe that Williams was required to identify by name any non-"lifers" who were not subjected to such quotas.

■ Similarly, the court disagrees with Judge Zoss's conclusion that Williams has not pleaded facts evidencing intentional or purposeful discrimination for the alleged less favorable treatment. First, discriminatory animus would seem to be the sort of "[m]alice, intent, knowledge, and other condition of mind of a person" that, under the federal pleading rules, "may be averred generally." *See* FED.R.CIV.P. 9(b); *but see Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir.1998) (to state a race discrimination claim under the equal protection clause, the plaintiff must allege not only that the defendants were aware of his or her race, but that they acted because of his or her race, requiring, at a minimum, that the plaintiff "allege particulars sufficient to sanction a factfinder in drawing a reasonable inference of intentional disparate treatment," which means that "the element of illegal motive must be pleaded by alleging specific non-conclusory facts from which such a motive may reasonably be inferred, not merely by generalized asseveration alone," and reaffirming this standard notwithstanding *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)); *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994) (holding that, in support of an "equal protection" claim based on race, "naked" assertions of racial motivation will not suffice; rather, the complaint "must specifically allege the events claimed to

constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent"); *and compare Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (an employment discrimination plaintiff is not required to plead facts establishing a *prima facie* case of discrimination, but is instead subject only to Rule 8(a) pleading requirements to put the defendant on notice of the claim). Williams's Complaint is replete with general allegations of invidious, discriminatory animus, based on his status as a "lifer." In addition to such admittedly conclusory allegations of discriminatory intent, however, Williams pleads sufficient facts from which discriminatory intent can be inferred: Williams also pleads that the defendants knew of his status as a "lifer," were aware of or responsible for establishing the quotas on jobs and level status for "lifers," knew the disparate impact of the quotas on "lifers" generally and on Williams in particular, and acted to impose the effects of the quotas upon Williams and other "lifers" precisely because of those effects. *See, e.g., Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (discriminatory purpose means that the decision-maker must have selected a particular course of action because of, rather than in spite of, its adverse effect upon an identifiable group). Again, the court finds that Williams has also adequately pleaded a "meeting of the minds," as required to sustain a civil rights "conspiracy" claim, by alleging the defendants' awareness of his "lifer" status, the job and level quotas on "lifers," and the effect of depriving him of his level status, as well as cooperation to impose disciplinary sanctions upon him to impose the effects of the discriminatory quotas upon him. *See Cooper*, 997 F.2d at 377; *Snelling*, 972 F.2d at 200.

█ **992**

 Although there may be no difficul-ty on the part of the defendants in showing that the purported disparate treatment of "lifers" has a rational basis, that issue is more properly addressed following the defendants' answer or upon a motion for summary judgment. For now, it is *not* "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"' of violation of Williams's equal protection rights or conspiracy to violate such rights, based on his "lifer" status, which makes it inappropriate for the court to dismiss these portions of Williams's Complaint for failure to state a claim upon which relief can be granted. *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."). Therefore, the court will modify the Report and Recommendation to permit this matter to proceed upon claims of violation of Williams's equal protection rights or conspiracy to violate such rights, based on his "lifer" status.

### E. Appointment Of Counsel

 In light of the apparent uncertainty about what claims Williams is attempting to assert in his *pro se* complaint, the court deems it appropriate to consider *sua sponte* whether counsel should be appointed to assist Williams with this litigation. Whether or not the court should appoint counsel in a prisoner's civil rights case is a matter in the court's discretion. *See Davis v. Scott,* 94 F.3d 444, 447 (8th Cir.1996). As the Eighth Circuit Court of Appeals has explained,

> "Indigent civil litigants do not have a constitutional or statutory right to appointed counsel." *Edgington v. Missouri Dep't of Corrections,* 52 F.3d 777, 780 (8th Cir.1995). The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim. *Swope [v. Cameron],* 73 F.3d [850,] 852 [ (8th Cir. 1996) ]; *In re Lane,* 801 F.2d 1040, 1043–44 (8th Cir.1986).

*Davis,* 94 F.3d at 447. Here, both Williams and the court—and, indeed, the defendants—will benefit from the appointment of counsel, in light of the evident confusion about the nature and legal basis for Williams's claims. Once the claims have been clarified by an amended pleading filed by counsel, in accordance with the court's determinations above, the defendants will have a clearer understanding of whether they should respond by answering Williams's claims or by filing another pre-answer motion to dismiss.

### III. CONCLUSION

Judge Zoss's December 27, 2001, Report and Recommendation on the defendants' April 20, 2001, motion to dismiss is **accepted in part, rejected in part, and modified in part,** as follows:

1. The Report and Recommendation is **accepted** as to the recommendation of dismissal of Williams's "due process" claims founded on either a "results" or "procedural irregularities" theory, and the defendants' motion to dismiss is **granted** as to those claims.

2. That portion of the Report and Recommendation recommending dismissal of Williams's "equal protection" claim is **rejected.** To the extent that the defendants sought dismissal of such a claim, the defendants' motion to dismiss is **denied.**

3. The Report and Recommendation is **modified** to the extent that, upon *de novo* review, the court concludes that this matter shall proceed upon the following claims:

(a) claims of "retaliation" and "conspiracy to retaliate" for jailhouse lawyering premised on the two disciplinary reports; and

(b) claims of violation of Williams's equal protection rights or conspiracy to violate such rights, based on his "lifer" status.

4. The Clerk of Court **shall appoint counsel** to represent plaintiff Williams in this matter. **On or before April 12, 2002,** counsel shall confer with Mr. Williams and file a First Amended Complaint asserting claims consistent with this ruling.

5. Defendants shall have **to and including June 3, 2002,** within which to move or plead in response to the Amended Complaint.

**IT IS SO ORDERED.**