Robert F. BYRD, Plaintiff,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

No. CIV.A. 01–2570(ESH).

United States District Court,
District of Columbia.

Dec. 29, 2003.

Gregory L. Lattimer, Washington, DC, for Plaintiff.

E. Louise R. Phillips, Kimberly Cheronn Matthews, Monique Daniel Pressley, Office of Corporation Counsel, D.C., Washington, DC, for Defendant.

### MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff has sued the District of Columbia and Terrance Gainer, the former Ex-

ecutive Assistant Chief of Police for the Metropolitan Police Department (MPD), alleging civil rights violations under 42 U.S.C. § 1983 and various common law torts. Plaintiff, an MPD officer, alleges that several MPD officers violated his constitutional rights by assaulting him after apparently misidentifying him as a carjacking suspect. For the reasons given below, the Court will grant defendants' Motion for Partial Summary Judgment as to the § 1983 claims.

## BACKGROUND

According to plaintiff's allegations, on March 7, 2001, plaintiff was on his way to work at the First District Police Station in Southwest Washington, D.C. While stopped at the Exxon Mini–Market at Pennsylvania and Branch Avenues in Southeast D.C., he witnessed an armed robbery and carjacking taking place near one of the gasoline pumps. Plaintiff called the MPD dispatcher on the police radio in his vehicle, described the crime that was in progress, and identified himself and his vehicle, since he was not in uniform or in a police vehicle. As the perpetrator drove away in the stolen car, plaintiff pursued him, while continuously updating the dispatcher on the hijacked vehicle's direction and speed of travel.

The perpetrator, after getting stuck in traffic at a stop light at 42nd Street and Benning Road, N.E., started to ram into the vehicle in front of him. Plaintiff got out of his car with his radio in hand and directed the marked police cars that were approaching the scene to the stolen vehicle. Instead of pursuing the carjacker, however, the on-duty officers "wrestled the plaintiff and pointed guns at him" until one of the "attacking officers" discovered plaintiff's police badge. (Compl.¶ 12.)

Meanwhile, the carjacker escaped the traffic jam and continued to flee. Plaintiff returned to his vehicle and resumed assisting in the pursuit over his radio. As he began to leave the scene, a second group of officers approached him. They "snatched him out of his then moving vehicle, pointed guns at his head and face, and repeatedly shouted vile obscenities at him." (*Id.* ¶ 14.) Despite plaintiff's attempts to identify himself as a police officer, he was "repeatedly struck about the face and the body," and after he fell to the ground, the officers "punch[ed] and stomp[ed] plaintiff all about the head and body," until one of them recognized him as a fellow officer. (*Id.*)

The complaint, as it now stands, alleges three counts: Assault and Battery against the District of Columbia (Count II), Deprivation of Civil Rights against the District of Columbia and defendant Gainer in his individual capacity (Count III), and Intentional Infliction of Emotional Distress against the District of Columbia (Count V). Plaintiff's § 1983 civil rights claim has been limited to an allegation that defendants engaged in a pattern and practice of failing to investigate and discipline MPD officers for their use of excessive force. (*See* Order July 14, 2003.)

Defendants have now moved for partial summary judgment seeking dismissal of all claims against defendant Gainer and the § 1983 and emotional distress claims against the District. Because the Court will grant defendants' summary judgment motion with respect to the § 1983 claims, it will not exercise supplemental jurisdiction over the remaining common law claims, and plaintiff's complaint will therefore be dismissed.

## ANALYSIS

In this somewhat unusual case, there is no real dispute between the parties as to either the facts or the law. Rather, the only issue is whether plaintiff has adduced

sufficient facts to hold the District and Gainer liable under § 1983 for the failure to investigate and discipline MPD officers for their alleged use of excessive force. Each defendant will be considered *seriatim.*

### I. Municipal Liability

 Plaintiff attempts to hold the District liable for constitutional violations allegedly committed by its police officers. Under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a city may be held liable under § 1983 for the deprivation of a plaintiff's constitutional rights, not under principles of *respondeat superior,* but instead only where its own "policy or custom ... inflicts the injury." *Id.* at 694, 98 S.Ct. 2018. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy ...." *Parker v. Dist. of Columbia,* 850 F.2d 708, 711–12 (D.C.Cir. 1988) (quoting *City of Okla. City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). The failure to train, supervise or discipline city employees can constitute such a policy or custom if it amounts to " 'deliberate indifference' towards the constitutional rights of persons in its domain." *Daskalea v. Dist. of Columbia,* 227 F.3d 433, 441 (D.C.Cir.2000) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388–89 & n. 7, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Carter v. Dist. of Columbia,* 795 F.2d 116, 122 (D.C.Cir.1986) (a municipality's failure to adequately train, supervise, investigate, and discipline police officers can give rise to municipal liability if that failure represents city policy and reflects deliberate indifference). Deliberate indifference is determined objectively, "by analyzing whether the municipality knew or should

have known of the risk of constitutional violations," and yet failed to respond as necessary. *Baker v. Dist. of Columbia,* 326 F.3d 1302, 1307 (D.C.Cir.2003). To prevail, plaintiff must show more than simple or even heightened negligence; the District's indifference must be conscious, or at least reckless. *See Canton,* 489 U.S. at 389, 109 S.Ct. 1197.

 Plaintiff argues that the District failed to properly investigate incidents of excessive force, rendering the District unable to adequately discipline those officers and creating an "environment within the MPD where reckless conduct and the violation of the individual rights of citizens are the norm." (Pl.'s Opp. at 13.) Plaintiff further claims that the defendant's "deliberate indifference" regarding the issue of excessive force caused his injury.

In support of his claim, plaintiff recounts the facts surrounding his claim of excessive force and then, without citation, claims that "it is without question a fact that no real investigation of the facts surrounding his beating ever took place." (*Id.* at 4.) While the District appears not to dispute plaintiff's claim that the incident at issue here was not properly investigated, that does not resolve the matter. For, even assuming the truth of plaintiff's claim, which one must do at this stage, that is not sufficient under the law for purposes of imposing liability on a municipality, since a single incident is clearly insufficient to establish the existence of a policy amounting to "deliberate indifference." *See Tuttle,* 471 U.S. at 823–24, 105 S.Ct. 2427.

Recognizing the need for more than a single incident, plaintiff cites to a Memorandum of Agreement (MOA) between the United States Department of Justice (DOJ), the District of Columbia, and the MPD, and relies entirely on this document as proof of a pattern or practice by the

District of failing to investigate and discipline officers for their excessive use of force. (*See* Pl.'s Opp. at 8.) Having reviewed this MOA,[1] the Court must reject plaintiff's lame attempt to transform the mere existence of a MOA into a policy or custom of deliberate indifference, for the MOA does not provide any evidence of specific instances of the District's failure to discipline, and if anything, it demonstrates not deliberate indifference, but rather, an effort to improve its practices and procedures relating to investigation and discipline of police misconduct.

In January 1999, more than two years before the incident at issue, Mayor Anthony Williams and MPD Chief Charles Ramsey requested that DOJ review all aspects of MPD's use of force. DOJ analyzed every reported use of force and every citizen allegation of the use of excessive force that occurred between 1994 and 1999. After DOJ's investigation, the District, DOJ and MPD executed the MOA, in which DOJ sets forth a series of policies, procedures and practices that the District and MPD must employ regarding officers' use of force, incident investigation, officer supervision and training, and disciplinary action. Although the MOA was not executed until June 2001, by that time MPD had already initiated a number of important policy reforms related to the use of force based on DOJ's "on-going technical assistance recommendations regarding [MPD's] use of force policies and procedures, training, investigations, [and] complaint handling...."[2] (Defs.' Reply, Ex. 1 at 3, 6.)

As plaintiff suggests, it may be fair to infer that the MOA reflects an awareness by the District of "serious allegations relating to our use of excessive force and our investigations of such use of force." (Pl.'s Opp., Ex. 1 at 2.) But a mere awareness in 1999 of a problem and a need for improvement is not, as a matter of law, sufficient to impose municipal liability for an incident that occurred in 2001. First, and perhaps most significantly, the MOA demonstrates that the District was not indifferent to the problem; on the contrary, it undertook affirmative steps as early as 1999 to remedy the situation. As the MOA itself notes, the District's "unprecedented request [for DOJ's investigation and recommendations] indicated the City and the Chief's commitment to minimizing the risk of excessive use of force in [MPD] and to promoting police integrity." (*Id.*) Moreover, as noted in the introduction to the MOA, even before its effective date in June 2001, the MPD had "begun to implement necessary reforms in the manner in which it investigates, monitors and manages use of force issues." (*Id.* at 3.)

From the MOA, it is clear that the District was adopting a proactive remedial approach, and it was, as early as 1999, attempting to reform its practices to eliminate the problems of the past. *Compare Daskalea*, 227 F.3d at 442 (jury had sufficient evidence to find deliberate indifference where there was, along with ample evidence of multiple incidents, a lack of evidence that a training program or any

1. Although plaintiff relies on the MOA, he has provided the Court only with its cover page and the introduction. (*See* Pl.'s Opp., Ex. 1.) The Court, however, has reviewed the entire MOA, which was submitted by defendants.

2. For example, Officer Gainer testified at his deposition that investigations into the number of incidents of deadly force used by officers, compared to the number of officers disciplined for the use of such force, prompted the development of the Force Investigation Team in January 1999, for "quicker, cleaner, independent investigations of use of force situations" where "discipline was meted out and cases referred to the U.S. Attorney's Office ...." (Def.'s Mot., Ex. B, Gainer Dep. at 22–23.)

other corrective measure had been implemented).

Further, to permit plaintiff to rely on no more than the existence of the MOA would effectively punish the District for recognizing the need for improving its practices. In effect, if one were to adopt plaintiff's approach, a municipality would be ill-advised to evaluate its operational practices or to institute reforms lest its efforts be labeled as a policy or custom of deliberate indifference. The inherent illogic of plaintiff's argument was recognized by the Supreme Court in a case involving Bureau of Prisons procedures:

> [O]ur cases have never held that improvements in the reliability of new procedures necessarily demonstrate the infirmity of those that were replaced. Other areas of the law, moreover, have for strong policy reasons resisted rules crediting the notion that, " 'because the world gets wiser as it gets older, therefore it was foolish before.' " ... [W]e believe the same principle supports our conclusion that the Government ought not be penalized and told to 'try harder' simply because the [department] has since upgraded its policies.

*Dusenbery v. United States,* 534 U.S. 161, 172, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (internal citations omitted).

Nor may plaintiff rely on the MOA to fill the void left by his lack of any statistical evidence or evidence of other failures to investigate and discipline officers for use of excessive force. The MOA does not cite any specific examples of police misconduct, and in violation of Circuit law, plaintiff offers none. *See, e.g., Daskalea,* 227 F.3d at 441–42 (claims of inadequate supervision and discipline of officers must be accompanied by specific evidence of multiple instances of open and notorious misconduct to establish deliberate indifference); *Carter,* 795 F.2d at 125 (a plaintiff establishes

a policy or custom when he presents "concentrated, fully packed, precisely delineated scenarios" of unconstitutional conduct).

In this regard, it is instructive to compare this case with those where courts in this Circuit have confronted the issue of whether there was evidence of persuasive misconduct sufficient to subject a municipality to § 1983 liability. For instance, the plaintiff in *Carter* brought a claim similar to the one here, but provided testimony of other specific instances of misconduct and limited statistical evidence demonstrating that complaints of police brutality were not investigated nor were the officers sanctioned. *Carter,* 795 F.2d at 123–24. The Court of Appeals concluded, nonetheless, that even this evidence was insufficient; the testimony of actual occurrences was "scattered and [the occurrences did] not coalesce into a discernable 'policy,' " and plaintiff's statistics were "too general to prove any pattern or policy." *Id.* In *Cox,* however, a plaintiff's claim of a failure to discipline officers for excessive force was sufficiently supported by "extremely detailed statistical evidence" of a failure to process excessive force complaints along with specific illustrations of the negative consequences of the District's dilatory conduct. *Cox v. Dist. of Columbia,* 821 F.Supp. 1, 15–16 (D.D.C.1993), *aff'd,* 40 F.3d 475, 1994 WL 609522 (D.C.Cir.1994); *see also Cox v. Dist. of Columbia,* No. 91–2004(JHG), 1992 WL 159303, at *3 (D.D.C. 1992). Similarly, in *Daskalea,* the plaintiff's claim of deliberate indifference by the District's correctional officers was adequately supported by evidence of numerous incidents of open and notorious constitutional violations committed after a court had already found liability for a failure to train officers to prevent such misconduct. *Daskalea,* 227 F.3d at 441–42.

In contrast to these cases, plaintiff here relies only on the existence of a MOA and

bald assertions that the District had an inadequate policy or practice regarding the use of excessive force characterized by "shabby investigations" and a "failure to discipline." (*See* Pl.'s Opp. at 13.) The conclusion is inescapable that, when judged against the level of exacting proof demanded by the cases in this Circuit, plaintiff's proof (or lack thereof) comes up woefully short.

## II. Liability of Defendant Gainer

█ Plaintiff attempts to pin liability for the incident at issue on Executive Assistant Chief Gainer based on his supervisory role over MPD officers.[3] Although Gainer did not assault plaintiff (and thus did not directly deprive plaintiff of his constitutional rights), he may be liable as the assaulting officers' supervisor if his "corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." (Pl.'s Opp. at 7 (quoting *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir.1988)).) "[T]he overwhelming majority of courts faced with claims of supervisory liability . . . have determined that, where responsibility is predicated on inattentiveness rather than affirmative misconduct, the plaintiff must establish a high degree of fault in order to implicate the supervisor in the constitutional infractions of his subordinates." *See Haynesworth v. Miller*, 820 F.2d 1245, 1261 (D.C.Cir.1987). Thus, in order to survive summary judgment plaintiff must present evidence that Gainer had an obligation to supervise or discipline the wrongdoers, that this duty was breached through "gross negligence" or "deliberate indifference" to the precautions necessary, and that this breach was the proximate cause of the constitutional violations that oc-

curred. *Id.* at 1260–61. The existence of the duty is "triggered by proof that, absent effective supervision, harm was not merely foreseeable, but was highly likely, given the circumstances of the case." *Id.* at 1261.

Plaintiff establishes through Gainer's deposition that he was responsible for the day-to-day operations of the MPD. (Def.'s Mot. Ex. B, Gainer Dep. at 11.) He also offers testimony that Gainer did not become aware of plaintiff's allegations until plaintiff's counsel "held the press conference a day or two later" and that Gainer believed an investigation should be opened at that time. (*Id.* at 49.) Gainer stated that, although he did not know the outcome of the investigation of plaintiff's allegations when he left MPD approximately a year after the incident, he thought there was a criminal investigation, and that the investigation was "ongoing" at the time of his departure. (*Id.* at 64–65.)

█ Plaintiff claims that this evidence establishes that Officer Gainer "did with deliberate indifference to and with reckless disregard for the safety and well-being of the plaintiff and the public at large, allow or cause to be committed the acts which deprived plaintiff of his civil rights." (Pl.'s Opp. at 7.) He provides no evidence, however, that Gainer individually had a duty to oversee a pending investigation into an incident of alleged officer misconduct, to discover the results of such an investigation, or to discipline officers upon resolution of an investigation. *See Beatty v. Lanham*, No. 92–7095, 1994 WL 581458, *1 (4th Cir.1994) (summary judgment is proper for supervisory defendants where plaintiff fails to establish an obligation regard-

---

**3.** The Court need not address whether Chief Gainer has "final policymaking authority" for purposes of individual liability given its finding that there is no evidence of a policy for which any supervisor can be held liable based upon his policymaking position. *See Triplett v. Dist. of Columbia*, 108 F.3d 1450, 1453–54 (D.C.Cir.1997).

ing the alleged violation). Furthermore, given Gainer's undisputed testimony that he was aware of the allegations in this case, believed that the incident should be investigated, and indeed thought that there was an ongoing investigation, it cannot be argued that he was guilty of the level of "deliberate indifference" required for the imposition of supervisory liability. *See Ottman v. City of Independence, Mo.,* 341 F.3d 751, 761 (8th Cir.2003) (supervisor was not deliberately indifferent where he did not "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see") (internal quotation and citation omitted).

Finally, in addition to any factual support for a claim of supervisory liability, there is a lack of any evidence that Gainer's supposed "corrective inaction" brought about the assault on plaintiff in this instance. *See Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 583 (1st Cir.1994) (summary judgment for supervisor defendant is proper where the "record is bereft of any proof, direct or inferential, of a causal link between [the supervisor's] activities and the alleged deprivation of constitutional rights"); *compare Carter v. Barker,* No. 99–1433, 2000 WL 1008794, *7 (4th Cir.2000) (plaintiff defeated defendant's summary judgment by demonstrating that supervisor was aware of constitutional violations, and had witnessed them occurring, yet failed to take any steps to prevent continued violations but instead facilitated them).

In short, plaintiff has failed to satisfy his burden of demonstrating that defendant Gainer violated his civil rights.

## CONCLUSION

For the reasons given above, the Court will grant summary judgment as to both defendants on plaintiff's claims under

§ 1983. These federal civil rights claims provided the Court with subject matter jurisdiction, and the Court declines to exercise its supplemental jurisdiction over the remaining common law claims, but instead will dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff may file the remaining non-federal claims in Superior Court. A separate Order accompanies this Memorandum Opinion.

### *ORDER*

For the reasons set forth the in the accompanying Memorandum Opinion, it is this 29th of December, 2003, hereby

**ORDERED** that defendants' summary judgment motion is **GRANTED IN PART** with respect to the § 1983 claims of Deprivation of Civil Rights against the District of Columbia and defendant Gainer in his individual capacity (Count III); it is

**FURTHER ORDERED** that plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE** and may be filed in the Superior Court of the District of Columbia.

**SO ORDERED.**